Good morning, Your Honors. My name is Spencer Smith, and I represent the appellants on this matter. If I can reserve three minutes for rebuttal. The appellants — Before you start, may I just ask one clarifying question so that when I'm listening to you, I know the answer to this? Sure. Did you appeal the statute of limitations determinations? Yes, Your Honor. And that's where I'm going to start, Your Honor. All right. Let's start there. And that's the procedural error that we are very concerned about. And that is the issue with the 1983 claim. The district court below summarily dismissed the 1983 claims of the appellants for the same reasons that the district court dismissed the Title VII claims. This caused undue prejudice to appellants Gregory Chin and Paul Aliato. And I'll start with Gregory Chin, Your Honors. Gregory Chin alleged that his disciplines in March of 2007 for leaving his post and September of 2007 for not doing an alleged mandatory count were discriminatory. The district court did not consider the merits of these claims. And because the court said that Mr. Chin filed his EEOC charge in December of 2008, and the claims did not go back to reach March of 2007. The 1983 claim would go back two years from the filing of the complaint, which is October of 2008. And they would capture these two alleged discriminatory acts. And that on its face, Your Honors, is plain error when it relates to the March 2007 and the September 2007 claims of discrimination. When we move on to Ms. Liato, she had a claim related to a 15-day suspension in May of 2007. Again, the court found that Ms. Liato filed her EEOC charge in October of 2008. And the court would not consider any matters before December 2007. Therefore, the district court summarily ruled that without considering the facts of Ms. Liato's May 2007 complaint, and that on its face is plain error. Your Honor, another issue we have is the issue regarding promotions. The claims of the appellants are twofold. They are claiming that disciplines are discriminatory at juvenile hall, as well as the promotional practices. It's undisputed that zero Asian Pacific Americans have worked in the acting position or permanent position since 1999. There hasn't between 1999 and 2009, there were no permanent positions that were open to compete for. And the way that supervisor positions were filled were by handpicking prospective employees for acting positions between 1999 and 2009. The defendants did not move for summary judgment on any of the promotion claims. Yet the district court granted a motion for summary judgment related to the promotion claims. This is, again, plain error. The defendants produced documents and declarations of several individuals referencing the acting promotions. They presented the declaration of Barry Young, who discussed how acting positions are selected and why the plaintiffs were not selected for the positions at paragraph 5 of his declaration. They also submitted the declaration of Redonio, who also discusses how acting positions are selected and why these particular appellants were not selected for acting positions at paragraph 8 of his declaration. They also submit the declaration of both directors, Ratcliffe and Doyle, who discuss how acting positions are selected and why the appellants were not selected for the position at paragraph 8 for Ratcliffe, paragraph 6 for Doyle. They also present the declaration of Allardo at paragraph 3, who articulates how acting positions are selected and why the appellants are not selected for the position. Despite presenting this evidence to the district court, the appellees did not move for summary judgment related to the acting positions, yet the court granted their motion or granted a motion. When it comes to the permanent position of Gregory Chin, again, the appellees presented the declaration of Brooks Houston, a director of Human Resources, who articulates the procedure for filling this permanent position and why Mr. Gregory Chin was not selected for the position. Again, the defendants did not move for summary judgment. And once we get past these procedural errors, we have to move on to the substantive decisions that this Court will have to do under Novo Review. In order to grant summary judgment on any of the claims under Novo Review would be an error, but it would require Your Honors to invade the province of the jury and make impermissible credibility determinations. And let's first start with the issue of disciplines. Roberts. I'm sorry. Disciplines. Disciplines. The district court focused on the fact of comparators. The Ninth Circuit has stressed many times that the issue of whether or not an employee is similarly situated is a question of fact for the jury. The district court decided as a matter of law that the comparators identified by the appellants were not similarly situated. The – specifically, the court said that the plaintiffs – excuse me, the appellants could not provide sufficient specifics about the comparators' disciplines to create a genuine issue of material fact. The appellants argued that they took the city's 30b-6 deposition and asked these very specific questions about the specific disciplines of the comparators. The city could not provide testimony. And we provided that, Your Honors, at footnote 8 of our open brief. Did you get the information, whether you got it from that specific person on that day? Did you get the information? What we got is a summary of the EEO statistics, which we presented in the first case, to the district court. So what – I mean, you know, the problem with a 30b-6 deposition is the person is not supposed to show up as Einstein on the subject. I mean, they're supposed to have to recall all this stuff off the top of their head. So if you got that statistical information, isn't it sort of no harm, no foul? No. And I think that's where we have to focus, is here is this issue of the magistrate judge saying this is not a memory contest, and the questions that were asked about the specifics would require tremendous recall. And we have to oppose that with what the Ninth Circuit has required 30b-6 deponents and the attorneys that represent them, what is required to be prepared. And that is sufficiently educate the witness. And to educate the witness would alleviate any need for any recall or any memory contest. You educate the witness, you provide them with the documentation, a summary of the documents. Did you get the documents? No. I thought you got the documents later. You got summary statistical evidence. Yes. But we don't have specifics about the reasons for the discipline. So what we have is a number. For example, we have an employee by race that was disciplined for 15 days. We then want to see if we can compare that employee's conduct with the conduct of the appellants. They could not give us specifics about the reasons for the discipline. Did you move after you got the actual summary statistics, did you then move to compel for the underlying reason? We moved to compel the 30b-6 deposition. No, I know, but you have the 30b-6. Uh-huh. The guy obviously can't recall off the top of his or her head. You get the summary statistics. They don't tell you the precise reason that Mr. So-and-so got disciplined, just that he did for 15 days. Did you then move to compel or go back to the court on that point? We did not. And this is where we – this is the position that we found ourselves in, is if you have 30b-6 deposition testimony, where it's clear that the defendant's record retention policy is such that they cannot get this information without someone committing it to memory, we should be able to argue to the ladies and gentlemen of the jury that this is evidence of pretext. This evidence was supposed to be retained as part of the EEO statistics. When they reported this information to the EEO, the underlying documentation should have been easily grabbed. This is not something that required undue burden to go find this information. Somebody got this information, turned it over to the EEO. So are you saying you have some kind of spoilation claim? Your Honor, we don't know. At this point in time, we don't know. We would have liked to have someone educated about the EEO stats and just testify about it so that we can have a decision on the merits. That's really – we don't have any evidence of any documents being destroyed. But you're going to have to get the information that you're looking for. You're going to have to go behind each and every one of these disciplines or failures to promote that you're talking about. And the person at a 30 v. 6 deposition certainly isn't going to know it. That person is generally there just to produce the documents, identify the documents, and then give names to people that might know. No. Again, there's only 20 disciplines at issue. So, again, this information was compiled and summarized in a fashion to protect the privacy of the individuals who had violated the rules. So we have, again, by race, the level of discipline and what the policy violation is. And in order to see if they're sufficiently similarly situated, we're going to have to look at the facts. For example, we have the appellants being disciplined for inattention to duty. There's a wide spectrum of inattention to duty because we have some correctional officers that have allowed inmates to escape. We've had some correctional officers that have gone out and drank with the inmates as they escaped. These are things that resulted in disciplines. Again, our concern is that the small number of Asian Pacific Islanders that are there working at the JPD, they have the highest level of discipline, despite not engaging in some of the egregious conduct which we provided, Your Honor. And so we just wanted to get this wide spectrum to, again, we can go through this process of canceling out comparators and say this person is not sufficiently similar in conduct or severity and go through that. And with only 20 comparators, the information has already been compiled and summarized. We just didn't see the burden in being able to go read the documents and provide us the specifics for that. The other issue that came up was the last promotion issue with Mr. Chin. If we get past the issue of the defendants not briefing or moving for summary judgment on that claim, that issue was resolved by the Court saying Mr. Chin did not have any evidence sufficient to dispute the fact that the exam was graded anonymously. We presented evidence that the exam required, the take-home exam required a narrative from the prospective applicant to summarize their experience, their training. And from that, it's easy to tell that who's been doing the acting position and who is not. All of the Asian applicants would not be able to say they've done the acting position because none of them have been appointed. Furthermore, Mr. Doyle, who presented a declaration in support of the motion, for summary judgment, who was the director and the exam grader, did not declare under the penalty of perjury that the exam was anonymous. We have another person, Ms. Brooks-Houston, who summarizes, without any foundation, that the exam was ostensibly anonymous. And the Court found that that was sufficient to decide as a matter of law that the promotion issue with Mr. Chin, the position he applied for, should be dismissed. Did you want to save remaining time for your rebuttal?  Okay. Thank you, Your Honor. You're welcome. Mr. Connors. Warren Metlitsky, Deputy City Attorney for the City and County of San Francisco. As the Court's aware, appellants here contend they were discriminated against by the city because they're Asian. Yet, both here in the Court of Appeal and in the district court below, they were unable to muster the evidence even to make a prima facie case. If I can proceed by way of example, Frank Chin, one of the appellants, was suspended in 2007 for 30 days because he let a detainee out of his room. That allowed that detainee to attack another detainee. Mr. Chin allowed himself to get locked in the room from which the detainee had just escaped. He wasn't carrying his radio, as he was required to do. He had a cell phone on him, but didn't use it to call anyone for help. He never reported the incident. And then he tried to talk a co-worker out of reporting the incident to try to cover it up. And based on that, and understandably, he was suspended. He alleges that he was suspended because he's Asian. But he made no showing, either in this court or in the court below, that similarly situated non-Asian employees were treated any differently. And the city offered a legitimate reason for that suspension, the facts that I just outlined. And there was no showing to rebut that that was a legitimate, nondiscriminatory purpose. He would have to make some sort of showing that, oh, you're just saying that. This is really because you're really doing this because I'm Asian. And that's but one example. That pattern repeats itself for each appellant and for each claim. For each, the city has a legitimate, nondiscriminatory reason for its action. And plaintiffs neither make their initial showing under McDonnell Douglas that a similarly situated non-Asian employee was treated differently. What do you respond to their allegation that since the 30b-6 witness couldn't identify specific types of discipline and they only received a summary, they could not really make a comparator? Well, I think what we need to do is step back and look at the facts surrounding the 30b-6 deposition. And even prior to the facts, the standard for reviewing the motion to compel on the 30b-6 deposition is whether that was clear error or the magistrate judge's ruling was clear error or contrary to the law. But looking at the facts, the 30b-6 deposition was noticed about seven days prior to the close of discovery. It didn't – it just simply asked for a deponent. There was some motion practice and an agreement about what the scope of that would be. The deponent gave the information the deponent was able to give. There was an argument as – or a dispute as to whether that was sufficient. That was put in front of a magistrate judge who on three separate bases ruled that the – that the 30b-6 deponent didn't have to go back and answer additional questions. And what's important to note here is we've been talking a lot about these promotion claims. Those claims are not contained in their complaint, in the factual allegations of their complaint. It's a very detailed complaint that walks through all the different potentially adverse actions that were taken, fact by fact by fact, and promotions not in there. Excuse me, promotions not in the factual allegations. The word may show up once in the complaint. In their – in appellants' responses to special interrogatories, contention interrogatories, asking what are all the acts that you allege were adverse employment acts, they don't identify promotions at all. And the reason I bring that up is because what – if you look at what happened in this case procedurally, promotions weren't really an issue until about the close of discovery when all of a sudden this PMK issue came up. And as you often – as one often finds, the theory in response to a summary judgment changes very differently from how the case had originally been pled and how it had gone forward. So the reason – so promotions sort of showed up right at the edge of the – at the end of the case, which also answers the question or, excuse me, appellant's argument about the city allegedly not moving on – on most of the claims. That was going to be my next question.  They weren't in the complaint. They hadn't been identified in special interrogatories. Now, as is – what happens as – what happens commonly in a summary judgment motion, there had been some questioning about it, obviously, in the PMK deposition. And the city took a belt-and-suspenders approach where you add additional information into your declarations in support of your summary judgment, anticipating an argument that plaintiffs may make. But in no way is the city required to guess at every claim that plaintiffs may come up with in opposition. That's the point of a complaint and contention interrogatory, is to have those identified so then we can move on them. Additionally, as to that specifically, the city did move for summary judgment on all claims. It included both the information, affirmative declarations, and special interrogatories showing that there were no facts, which would satisfy both Attakee's and Selatek's. What Plaintiff's primary complaint seems to be is that there wasn't a separate heading. It's a purely technical procedural claim, but there wasn't a separate heading that said we're moving on these promotional claims. Ultimately, no prejudice was suffered. And the district court – I'll also note that the district court under Rule 56 has the power sua sponte to grant summary judgment. So with the evidence before it, the district court had the power to rule all on its own. As to the argument that the district court never even reached the 1983 claims, that's belied by the record. If you look at the court's order on page 64, I will quote it. I'm sorry. It's Appellant's Excerpts of Record, 64. It's the district court's order. The court first discussed the difference in statute of limitations between Title VII and Section 1983 and identified that they were different. Then the court – and the court set a date by which the 1983 claims would be tied marred, which was – I believe it was October 10, 2006. It may have been February 10, 2006. It's in the court's order. It's October 10, 2006. But then the court said, and I quote, Ultimately, the same deficiencies that preclude a finding that tribal issues of material fact exist in connection with plaintiff's Title VII claims exist with respect to plaintiff's Section 1983 claims. The court reached the merits. It continued and said, quote, Namely, and for all of the reasons highlighted in connection with the court's discussion of the plaintiff's Title VII claims, plaintiff's evidence fails to demonstrate that plaintiffs, each of them, were treated differently from others similarly situated based on an impermissible classification. In other words, plaintiff's evidence fails to raise a tribal issue as to discriminatory purpose in the action taken by plaintiff's JPD supervisors. As such, plaintiffs do not prevail in establishing a tribal issue as to their Section 1983 claims. And one, with respect to, I guess I'll call it the promotion or the acting, that's what the promotion claim is, isn't it, the being an acting person during that period? There are two separate promotion claims. There is a global claim that applies to three of the four appellants about being promoted to acting supervisor. And then there's another actual claim where Gregory Chin took the civil service test. So let me ask you then on the global claim that one piece of evidence that I think they continue to rely on is that there weren't, in all these acting people that got appointed, there were never any Asians. And so I think that's one piece of evidence they point to. What is your response to that? Well, the initial response is they didn't make showing that similarly situated persons were, who were non-Asian, were treated more favorably. And the district court pointed this out. They don't identify who those, the people that were appointed are. They don't talk about their qualifications. They don't give a time period. Their only evidence of that is a cursory line in three of the four appellants' declarations where they say, I asked, you know, either one person or a couple person if I could be an acting supervisor. But there's no factual information sufficient to even make the prima facie case. And the statistics also, if you look at those, and I don't think that we need to simply because they haven't made their showing, there are 87, I think in 2008 there were 87 level 8320, the level of appellants. Only seven of them were Asian. And there were only 12 appointments over time to acting supervisors' positions. So a small percentage of the 8320s were acting supervisors anyway, and a small number of them were Asians. The record also shows that there was at least one Asian 8320 who was repeatedly asked to be an acting supervisor and declined to do so. So plaintiffs haven't made their initial showing. The statistics don't bear out what they're saying. And those were never claims that plaintiff made in their complaint or in the special interrogatory, in their response to special interrogatories that asked for all the plaintiff's contention. And one final note I'd like to make. There's this discussion about the other promotion, the formal promotion, where Mr. Chin took this civil service test. And that test, that test was graded, and people were put in one of three rankings. It's not that there were only three people. They were put in three categories. Everyone in the first category or the first ranking moved on to the next stage, and Mr. Chin was in the second category. The complaint there, as I understand it, is that the evidence was that this test might not be anonymous. That is, first of all, that's speculation. Second of all, it's not relevant. Plaintiff needs to make a showing, an initial showing that similarly situated people who are not Asian were treated differently. And there's been no discussion about the qualifications of the other people. There was no discussion about the fact that in that group, the first group above a plaintiff that moved on, there was at least one Asian employee. He's in that second group down, correct? Right. Yes. That's correct, Your Honor. The civil service test, you get a number score, and you literally rank on there. You take the test to qualify for promotion. He was in the second group. So the argument that about anonymity is speculation and ultimately not relevant because plaintiffs still don't meet their initial burden under McDonnell-Douglas. Unless the Court has any additional questions. I have no questions.  Thank you, Your Honors. Your Honors, I'll be brief. At summary judgment, we have to be very careful when we substitute a trial with oral testimony for a trial on the papers. We hear the appellee's counsel come up and say plaintiffs couldn't produce any evidence. For example, anonymity is speculation. Well, we provided the reasons for that. The examiner, Mr. Doyle, we asked for his deposition during discovery. He's sick. He can't come. But he files a declaration despite being unavailable during discovery. So we couldn't ask about whether or not the test was anonymous. In addition, the appellees submit the declaration of Alardo, not disclosed in discovery. The declaration of White, not disclosed in discovery. The declaration of Castellanos, not disclosed in discovery. Not in their Rule 26 disclosures or their amended Rule 26 disclosures. The declaration of Ng, not disclosed in their initial disclosures. The declaration of Garcia, not disclosed. Now, what do these declarations say? The declarations say, I reviewed their complaints of discrimination, and they lack merit. These people were not identified during discovery. We had no opportunity to take discovery from them. Now, when you compound this type of participation in the summary judgment proceeding, it seems to behoove the moving party to say, give them nothing so they have nothing. That's what we cannot countenance. We have a 30B6 deposition who can't give us specifics about disciplines. We asked the 30B6 deponent about the acting position. I can't give you specifics about anyone who did the acting position for less than ten consecutive days in a row. So you know what they do. You work nine days. We don't have to keep a record of it. We're not going to testify. That's the record before us. We are limited in our record, not because of any lack of diligence on the part of the appellants. This is all due to the obstruction done by the defendants. We are limited in what we have. When we talk about the issue of getting the acting positions and whether or not our clients are qualified, and there's just one statement about their – they asked for it. Now, we produced evidence of the performance evaluations, all which exceeded expectations prior to the permanent position being posted. We presented their own testimony about their qualifications. So again, to summarize these things on the issue of promotion, if it wasn't part of the case, on reply, the defendants should have said so. It's a waiver. If you argue an issue on summary judgment, you cannot come back later on appeal and say we didn't have notice it was waived. They briefed it, and the Court considered it because it was part of the record. Thank you. Thank both of you for the argument this morning. The case of Lamb v. San Francisco is submitted, as is the last case on the calendar, Ritchie v. Colvin, and we're adjourned.
judges: Quist, McKeown, Gould